NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| JAMES ELLIS LANG, | ) |
| Plaintiff, | ) No. 5:10-CV-379-HRW |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| LaDONNA THOMPSON, *et al.*, | ) **AND ORDER** |
| Defendants. | ) |

\*\* \*\* \*\* \*\* \*\*

Plaintiff James Ellis Lang, currently incarcerated in Fayette County Detention Center ("FCDC") located in Lexington, Kentucky, has filed the instant *pro se* civil rights complaint asserting numerous claims under 42 U.S.C. § 1983.[1] Because Lang does not allege that he is under imminent danger of serious physical injury, as

---

[1] Lang has named the following defendants, in both their individual and official capacities: (1) LaDonna Thompson, Commissioner, Kentucky Department of Corrections; (2) Ron Bishop, Jailer, FCDC; (3) Dwight Hall, Employee, FCDC, (4) Edyth Dabney, Employee, FCDC; (5) Robyn Smith, Nurse Practitioner, Correctional Medical Services ("CMS"); (6) Erika Burnside, Nurse, CMS, (7) John and/or Jane Doe Defendants, Agents, Employees of the FCDC; (8) John and/or Jane Doe Defendants, Owners, Corporate Officers, Agents, Employees, CMS; (9) John and/or Jane Doe Defendants, Owners, Corporate Officers, Agents, Employees of North Atlantic Extradition Service ("NAES").

required by 28 U.S.C. § 1915(g), the Court will deny Lang's motion to proceed *in forma pauperis* and require him to pay the $350.00 filing fee, in full, within thirty days of the date of entry of this Order. The Court will also deny Lang's related motions seeking preliminary injunctive relief, waiver of the Certification of Inmate Account Statement, and an Order directing the Clerk to serve the defendants.

## BACKGROUND
### 1. Allegations of the Complaint

Lang alleges that he suffers from various medical conditions including possible prostrate cancer and hypertension. In July 2010, he was confined in the Orleans Parish Prison ("OPP") in New Orleans, Louisiana. On July 20, 2010, NAES officials arrived to transfer him to the FCDC pursuant to Kentucky warrants charging him with violating his parole by possessing a forged instrument. Lang states that NAES officials did not deliver him to the FCDC until three weeks later.

Lang alleges that NAES officials took circuitous routes and made numerous unnecessary stops along the way. He alleges that upon leaving the Roederer Correctional Complex in La Grange, Kentucky, they backtracked to Oklahoma instead of taking him to the FCDC, a distance of 85 miles.

Lang states that during the entire transport process, NAES officials refused to give him his medications, ignored his complaints of pain and discomfort, claimed that

their superiors instructed them not to address his medical complaints, failed to bring his medications and his medical charts from the OPP, and denied him access to phone, paper and envelopes with which to contact his family. Lang states that he was shackled, belted, handcuffed, and forced to sit in the vehicle 24 hours a day with only occasional bathroom breaks [D. E. 2, pp. 4-8]. He alleges that while he was housed in a Missouri jail en route to the FCDC, he became ill and was taken to a local hospital where he received treatment [*Id.*, p. 8].

On August 10, 2010, Lang arrived at the FCDC. He lodges the following complaints about the conditions of his confinement at the FCDC:

(1) a CMS nurse improperly attempted to administer Ibuprofen to him,[2] ignoring that his blood pressure medication contraindicates Ibuprofen.

(2) The blanket "narcotic-free" policy of the FCDC and CMS, and their resulting refusal to administer unspecified medicine to him (which he claims was "non-narcotic"), was unreasonable and violated the Eighth Amendment of the United States Constitution;

(3) CMS nurses Erika Burnside and Robyn Smith, CMS nurses, refused to dispense unspecified pain medicine to him because of the narcotics ban, and refused

---

[2] Lang alleges that the FCDC medical personnel are contract employees of Correctional Medical Services ("CMS"). *Id.*

to diagnose his complaints, stating doing so would be cost-prohibitive;

(4) FCDC and CMS staff failed to obtain his medical records from the OPP, which records would have enabled them to properly diagnose and treat his medical conditions;

(5) FCDC and CMS denied him prescription glasses, dentures, a hearing aid, and their failure to do so violated KRS. 441.045, his right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment of the United States Constitution, and his right to equal protection of the law guaranteed by the Fourteenth Amendment of the United States Constitution;

(6) The FCDC's inadequate provision of paper, postage, photo-copies, and other supplies, as well as its inadequate law library, prevented him from maintaining a civil action in the Franklin Circuit Court challenging the Kentucky Parole Board's authority to hold a parole violation hearing, thus violating his right of access to the courts, guaranteed by the First Amendment of the United States Constitution; and

(7) The FCDC's refusal to issue a properly completed Certificate of Inmate Account ("CIA") form prevented him from obtaining pauper status in the Franklin Circuit civil action challenging his parole violation, thus violating his First Amendment rights.

Lang attached several grievances he submitted to the FCDC staff [D. E. 2-1]. He states that he wrote LaDonna Thompson, Commissioner of the KDOC, complaining about the lack of legal supplies and legal services, and that in response she informed him that he must first submit such grievances at the county level. Lang alleges that although he submitted several sick call requests and grievances about his other complaints, all of which the FCDC denied, he was not required to have administratively exhausted any remedies. Lang seeks injunctive relief requiring the FCDC to take specific remedial steps and transfer him to a prison in Louisiana. He also demands substantial compensatory and punitive damages from all defendants in both their official and individual capacities.

## 2. **Lang's Prior Strikes Under 28 U.S.C. § 1915(g)**

Title 28 U.S.C. § 1915(g) prohibits prisoners from proceeding *in forma pauperis* when they abuse their pauper status by filing meritless successive lawsuits concerning prison conditions. That statute provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The Public Electronic Access to Public Records ("PACER") database website compiles information concerning civil actions filed in all federal courts. According to PACER, four of Lang's prior civil rights actions have been dismissed for failure to state a claim, either on initial screening or at the summary judgment stage. *See, e.g.*, *Lang v. Marshall*, No. 3:95-CV-00054-JMH (E.D. Ky.) (R. 18, March 21, 1996); *Lang v. Sapp*, No. 5:00-CV-00400-KSF (E.D. Ky.) (R. 50, November 8, 2001); *Lang v. Campbell*, No. 3:01-CV-00027-JMH (E.D. Ky) (R. 8, May 9, 2001); *Lang v. Briscoe*, No. 6:04-CV-00567-DCR (E.D. Ky.) (R. 9, March 29, 2005).[3]

As Lang has had at least three "strikes" within the meaning of § 1915(g), he cannot proceed with this civil action without prepayment of the $350.00 filing fee unless he demonstrates that he is "under imminent danger of serious physical injury." *See* § 1915(g). The Court will now examine the Lang's Complaint to determine whether Lang alleges imminent danger of serious physical injury, thus allowing him to proceed *in forma pauperis*.

## DISCUSSION
### 1. **Motion to Proceed *In Forma Pauperis***

Although Lang challenges the adequacy of his medical treatment, both during his transport and after he arrived at the FCDC, he does not allege that he faces

---

[3] On October 31, 2005, the Sixth Circuit Court of Appeals affirmed the dismissal of *Lang v. Briscoe*. *See id.,* R. 21.

*imminent* danger of serious physical injury, which is the standard under § 1915(g). Section § 1915(g)'s exception focuses on the risk of future injury, not on whether the inmate deserves a remedy for past misconduct. *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999).

Lang alleges that he was denied medical treatment when he was transported to Kentucky in July-August 2010. However, those claims involve past events, not events alleging *imminent* danger of serious physical injury, *i.e.*, a claim that the alleged injury will occur in the future. In choosing the word "imminent," Congress intended to convey the sense of immediacy or something on the point of happening, not an event which transpired in the past. *Censke v. Smith*, No.1:07-CV-00691, 2007 WL 2594539 at *3 (W.D. Mich. September 4, 2007). A prisoner's claims of past danger is insufficient to invoke the exception. *Tucker v. Ludwick,* No. 09-CV-13247, 2009 WL 2713950, at *2 (E.D. Mich. August 26, 2009).

Lang next complains that upon arrival at the FCDC, CMS staff wrongfully denied him unspecified medication because of the FCDC's narcotics ban, then refused either to examine him or diagnose his symptoms. Lang now alleges in his motion seeking a preliminary injunction that he is in imminent danger of serious physical injury because of these denials, but when he filed various grievances at the FCDC, he did not allege imminent danger. He alleged only generally that he

disagreed with the medical decisions and the underlying "no narcotics" policy.

For instance, in his August 20, 2010, grievance Lang alleged only that he was "sick," disagreed with FCDC's policy banning narcotics and mental health services, and argued that KRS. 441.045 requires jails to provide such medical services [D.E. 2-1, p. 6.] Lang neither indicated that he was in danger of imminent physical harm, nor that he feared that his allegedly dormant prostate cancer had been triggered into disabling reality due to his arduous fifteen-day transport to Kentucky. In that grievance he demanded an evaluation by a psychiatrist and an opthamologist, prescription reading glasses, dentures, and a hearing aid. FCDC Staff responded that on August 10, 2010, Lang had been prescribed pain medication and that he had been taking that medication as prescribed.

In his September 10, 2010, grievance, Lang again requested "necessary" medical services and prescription eyeglasses. Staff responded that KRS. 411.045 required jails to provide only medically necessary services, and that prescription eyeglasses did not constitute medically necessary services.

Neither the denial of eyeglasses nor dental services constitutes imminent danger of future harm under § 1915(g). *Menefee v. Pramstaller*, No. 2:06-CV-12922, 2006 WL 2160411, at *2 (E.D. Mich., July 31, 2006). Likewise, the denial of a hearing aid also does not qualify as imminent danger of serious physical injury for

purposes of 28 U.S.C. § 1915(g). *Williams v. Louisiana*, No, 07-0602, 2007 WL 1747010, at *4 (E. D. La. May 7, 2007).

In his Complaint and grievances, Lang also complained at length about numerous non-medical conditions of his confinement, such as the allegedly inadequate supply of pens, paper, stamped envelopes, photo-copiers, law books, as well as his inability to pursue other civil litigation. *See, e.g.*, Grievances, D. E. 2-1, pp. 2,4, 21, and 26 (complaining about non-medical issues). Lang's emphasis on these administrative issues detracts from any construed argument that for purposes of 28 U.S.C. § 1915(g), he is or may be in imminent danger of serious physical injury. *See Williams*, 2007 WL 1747010, at *2-3 (finding that prisoner could not proceed under either § 1915(g) or the mandamus statute as to his non-medical claims alleging the denial of paper, pens, postage stamps, envelopes, law library, and phone access).

Accordingly, Lang has failed to demonstrate that with respect to any of his medical claims, he is under imminent danger of serious physical injury as defined by § 1915(g). For that reason, the Court will deny Lang's motion to proceed *in forma pauperis* and will require him to pay the entire $350.00 filing fee, in full, within twenty days of the entry of this Order.

## 2. **Motion for Preliminary Injunction**

Lang has also filed a motion for preliminary injunctive relief, asking the Court

to order the defendants to provide him with, among other things, a hearing aid, dentures, and prescription eyeglasses; and an independent medical evaluation at the University of Kentucky. The Court will deny that motion because Lang does not satisfy any of the criterion necessary for awarding preliminary injunctive relief.

Preliminary injunctive relief is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). In deciding if a preliminary injunction is justified, the Court must "weigh carefully the interests on both sides." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975).

The Sixth Circuit has developed a well-settled, four-factor test to direct the Court's inquiry. *See, e.g., Int'l Longshoremen's Ass'n v. Norfolk Southern Corp.*, 927 F.2d 900, 903 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 63 (1991). The Court should consider: (1) whether there is a strong or substantial likelihood of success on the merits; (2) whether an injunction is necessary to prevent irreparable harm to the plaintiff; (3) whether granting the injunction will cause harm to others, including the defendant; and (4) whether the public interest favors granting the injunction. *Id.*; *see*

*also Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). These factors are not prerequisites, and they need not be given equal weight but they are factors to be balanced against each other. *In re Eagle-Pitcher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). The plaintiff bears the burden of proving that an injunction is proper. *Overstreet*, 305 F.3d at 573.

As to his medical claims, Lang does not satisfy the first criterion, a showing of substantial likelihood of success on the merits. An Eighth Amendment violation occurs when a prison official is deliberately indifferent to the serious medical needs of a prisoner, *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001), but not every claim of inadequate medical treatment qualifies as an Eighth Amendment violation. *Estelle*, 429 U.S. at 105.[4]

The differences in judgment between an inmate and prison medical personnel regarding the appropriate medical treatment are insufficient to state an Eighth

---

[4]

As the Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).

Amendment claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). A difference of opinion on medical issues is all that Lang describes in his Complaint.

As noted, the FCDC/CMS staff promptly responded to Lang's various medical complaints, explaining that he had been given, and was taking, pain medicine and that under the applicable Kentucky statute, prescription eyeglasses are not medical necessities. Lang was not denied pain medicine or medical treatment as to his overall health complaints; he merely disagreed about the *type* of pain medicine and the *type* of medical treatment he received. Disputes of this nature do not establish deliberate indifference under the Eighth Amendment. *See Ellis v. Riley-pelfrey*, No. 3;07-CV-920, 2010 3168111, at *9, (M. D. Ala., July 14, 2010) (finding that prisoner's disagreement over type of pain medication he received did not constitute deliberate indifference); *Sawyer v. Noble*, 708 F. Supp.2d 581, 594-95 (W. D. Va., 2010) (finding that State jail officials were not deliberately indifferent to inmate's need for narcotic pain medication, where officials had no reason to believe limiting narcotic pain medications was likely to deny inmates adequate medical care).

Lang also fails to establish the substantial likelihood of success on his other medical claims. Courts have denied preliminary injunctions where prisoners have demanded non-essential medical supplies such as a specialized diet for diabetes and hypertension; eyeglasses, hearing aids, and dental plates, finding that the denial of

these items would not cause irreparable harm. *See Chacon v. Ofogh*, No. 7:08-CV-00046, 2008 WL 4146142, at *5 (W. D. Va., September 8, 2008) (denial of hearing aids); *Williams*, 2007 WL 1747010, at *2-3 (finding that prisoner could not proceed under either § 1915(g) or mandamus as to his medical claims challenging the denial of all of the above items).

Courts have consistently denied prisoner's demands for preliminary injunctive relief where their medical claims were based merely on disagreement with the adequacy of treatment they received at the prison. *See Kennedy v. Potter*, 344 F. App'x 987 (5th Cir. 2009) (affirming the denial of a preliminary injunction where prisoner who demanded the services of an outside neurosurgeon did not establish deliberate indifference); *White v. Goff*, No. 09-3118, 2009 WL 3182972 (10th Cir., October 6, 2009) (denying preliminary injunction where the prisoner received medical treatment from the prison, but merely disagreed with the course of his treatment); *Carney v. Treadeau*, No. 07-00083, 2008 WL 4283518, at *2 (W.D. Mich., Sept. 11, 2008) (denying preliminary injunction where prisoner sought different medical treatment but failed to establish probable success on the merits).

Under the second criterion, Lang does not establish that he will sustain irreparable injury if he is denied injunctive relief as to any of his claims. Lang alleges that the arduous 15-day trip from the OOP to the FCDC caused his dormant prostate

cancer to recur and spread to other areas of his body, and that he was experiencing pain in his groin and kidney area. D. E. 6, pp. 5-7. He claims he cannot sit up for more than 30-45 minutes, and is restricted to his bed. *Id.*, p. 7.

However, Lang conveyed none of these grave and detailed allegations in his recent administrative grievances, focusing instead on numerous non-medical complaints such as demands for ink pens, paper, copies, and pauper forms needed to challenge the Kentucky Parole Board's authority. As noted in the preceding section of this Order, Lang substantially lessened the impact of any argument favoring emergency medical relief by devoting half of his 26-page Complaint demanding non-essential medical devices and administrative supplies. Lang's detailed complaints about these issues suggest that he is not as medically impaired as he claims, which diminishes his argument that he would suffer irreparable harm absent an injunction.

Lang also fails to establish that he will suffer irreparable injury if he is denied preliminary injunctive relief on his First Amendment claims stemming from the FCDC's alleged refusal to properly issue an *in forma pauperis* document. In this action, Lang essentially collaterally challenges the dismissal of his Franklin Circuit Court action, claiming that the FCDC's refusal to process a CIA form caused the dismissal. Prisoners have a constitutional right to meaningful access to the courts, which means that prison officials must ensure that inmates in their care have access

to the courts that is "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977), *disapproved of in part by Lewis v. Casey*, 518 U.S. 343 (1996). The dismissal of the Franklin Circuit court action does not, however, subject Lang either to irreparable harm or imminent danger of serious physical injury. Any claim of emotional distress is inadequate because an inmate may not seek damages for emotional distress or mental suffering without showing a prior physical injury. 42 U.S.C. § 1997e(e). *See Mitchell v. Horn*, 318 F.3d 523, 533 (3rd Cir. 2003); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997).

Lang also fails to establish that he will suffer irreparable injury if he is not granted preliminary injunctive relief on his other First Amendment claims alleging inadequate administrative supplies at the FCDC. The right of access to the courts does not include free and unlimited access to photocopies. *Courtemanche v. Gregels*, 79 F. App'x 115, 117 (6th Cir.2003); *Fazzini v. Gluch*, No. 88-2147, 1989 WL 54125, at *2 (6th Cir. May 23, 1989) (unpublished) (case against federal prison employees). Further, while an indigent inmate must be provided stamps at state expense to mail legal documents, *see Bounds*, 430 U.S. at 824-25, prison officials may restrict the amount of free postage that an inmate receives. *Fazzini*, 1989 WL 54125, at *2 (citing 28 C.F.R. 4 540.21(d)). The alleged denial of administrative supplies, *i.e.*, pens, paper, stamps, and the like clearly did not prevent Lang from filing the instant

twenty-six page Complaint in this proceeding.

Finally, under the third and fourth criteria, the public interest would not be served by granting a preliminary injunction. Indeed, doing so would be harmful because judicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context. *Clay v. Isard*, No 09-00209, 2010 WL 565121, at *2 (W. D. Mich., February 10, 2009).

## CONCLUSION

In summary, because of Lang's history of filing abusive prisoner litigation, and his failure to show that he is under imminent danger of serious physical injury as defined by 28 U.S.C. § 1915(g), the Court will overrule and deny Lang's motion to proceed *in forma pauperis,* require him to remit the $350.00 filing fee within twenty days, or risk dismissal, and overrule and deny his motion for preliminary injunctive relief and other motions. Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff James Ellis Lang's "Motion to Proceed *in forma pauperis*," [D. E. 3] is **OVERRULED**;

(2) Lang's "Motion for a Waiver of Certification of Inmate Account Statement and Motion Directing Ron Bishop to Forward a Certified Statement of Plaintiff's Inmate Account, Copies and Grievances," [D. E. 4] is **OVERRULED**;

(3) Lang's "Motion for Order Directing the Clerk to Serve the Defendants," [D. E. 5] is **OVERRULED**;

(4) Lang's "Motion for Preliminary Injunction," [D. E. 6] is **OVERRULED**;

(5) If Lang intends to proceed further in this action, he must pay the requisite $350.00 filing fee to the Clerk of this Court within thirty (30) days from the date of entry of this Order. If Lang fails to pay the full $350.00 filing fee within the specified time, the Court will dismiss the case for failure to prosecute;

(6) If this case is dismissed for failure to prosecute, it will not be reinstated even if Lang subsequently pays the filing fee. *McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997);

(7) The Court may bar future civil filings by Lang unless they are accompanied by the full amount of the filing fee; and

(8) Upon either the payment of the $350.00 filing fee or the expiration of the specified thirty-day period, the Clerk of the Court is directed to submit the record.

This 30th day of November, 2010.

Henry R. Wilhoit, Jr., Senior Judge